UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ALAN J. PERRY, et al., | ) | |
| --- | --- | --- |
| Plaintiffs | ) | |
| v. | ) | 2:15-cv-00310-JCN |
| JULIET ALEXANDER, et al., | ) | |
| Defendants | ) | |
| PETER TINKHAM, et al., | ) | |
| Plaintiffs | ) | |
| v. | ) | |
| LAURA PERRY, et al., | ) | |
| Defendants | ) | |

**DECISION AND ORDER ON MOTIONS FOR SANCTIONS**

This matter is before the Court on the motion for sanctions (ECF No. 202) filed by Defendants Juliet Alexander and Peter Tinkham (hereafter "Defendants"), and the motion for sanctions (ECF No. 203) filed by Plaintiffs Alan Perry, Nina Perry, and Laura Perry (hereafter "Plaintiffs"). Both motions were filed after Defendants' counsel reported to the court that the parties had reached a settlement in the case.[1]

---

[1] Defendants filed an interlocutory appeal from the Court's orders granting counsel's motion to withdraw and denying Defendants' motion for appointment of counsel. (Notice of Appeal, ECF No. 224.) "[A]s a general rule, the filing of a notice of appeal divests a district court of authority to proceed with respect to any matter touching upon, or involved in, the appeal." *United States v. Brooks*, 145 F.3d 446, 455 (1st Cir. 1998) (internal quotation marks omitted). However, the Courts of Appeals have jurisdiction of appeals from final decisions, 28 U.S.C. § 1291, a defined group of interlocutory decisions, 28 U.S.C. § 1292, and a "small class [of decisions] which finally determine claims of right separable from, and collateral to, rights

Through their motion, Defendants contend "Plaintiffs breached the terms of what they thought was a settlement" and should be sanctioned and compelled to settle on certain terms. (Defendants' Motion at 14.) Through their motion, Plaintiffs assert that the parties agreed to settle on the terms contained in a settlement agreement signed by Plaintiffs. Plaintiffs, however, do not ask the Court to enforce the settlement agreement. Instead, Plaintiffs request that as a sanction for Defendants' breach of the settlement agreement, Defendants' repeated disregard for court orders and Defendants' disrespect of the judicial process, the Court enter a default against Defendants on Plaintiffs' claims and dismiss Defendant Tinkham's counterclaim.

## BACKGROUND

On July 10, 2017, the Court empaneled a jury for trial, which was to begin on July 31, 2017. On July 26, 2017, Defendants' counsel informed the Court that the parties had reached a settlement of the matter. In accordance with the reported settlement, the Court entered the following order on the docket:

---

asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). "[I]t is well-settled that interlocutory orders denying motions for appointment of counsel are non-final, and, generally, not immediately appealable." *Colman v. Goord*, 2 F. App'x 170, 171 (2d Cir. 2001). *See, e.g., Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011); *Catanzaro v. Collins,* 447 F. App'x 397, 399 (3d Cir. 2011); *Williams v. Maryland*, 346 F. App'x 974, 975 (4th Cir. 2009) (per curiam); *Lopez v. Newport Beach Police Dep't*, No. 8:16-cv-02267, 2017 WL 729700, at *2 (C.D. Cal. Feb. 27, 2017); *Jones v. Forbes*, No. 3:15-cv-00613, 2016 WL 409667, at *1 (D. Conn. Feb. 2, 2016); *Angelone v. Furst*, No. 3:07-cv-05538, 2012 WL 195021, at *1 (W.D. Wash. Jan. 23, 2012). Similarly, an order disqualifying counsel or permitting counsel to withdraw is interlocutory in nature and an appeal of such an order does not divest the district court of jurisdiction. *Richardson-Merrell*, *Inc. v. Koller*, 472 U.S. 424, 437 – 38 (1985) (order disqualifying counsel); *Patel v. British Airways*, 841 F. Supp. 87, 88 (E.D.N.Y. 1994) (order granting counsel's motion for leave to withdraw). The orders challenged in Defendants' notice of appeal are not final orders under § 1291 and are not a type of interlocutory order subject to appeal under § 1292. Furthermore, because the issues raised in Defendants' notice of appeal would not evade review on appeal of a final order, the orders do not fall within the "collateral order doctrine." *United States v. Gorski*, 807 F.3d 451, 458 (1st Cir. 2015). Accordingly, Defendants' filing of the notice of appeal did not divest the Court of jurisdiction.

> NOTICE of Settlement by Defendants and PROCEDURAL ORDER RE: SETTLEMENT: Counsel having advised the Court on 7/26/17 that the settlement has been effected by mutual agreement of the parties herein, it is hereby ORDERED that counsel shall complete the settlement of this matter within thirty (30) days of this date and cause to be filed a stipulation of dismissal of this matter with prejudice and without costs, failing which, the case will be dismissed pursuant to Local Rule 41.1(a) (Stipulation of dismissal due by 8/25/17).

As a result of the report of the settlement, the Court discharged the jury. After the date the trial was to commence, the parties informed the Court that some issues regarding the settlement had arisen. The Court convened a telephonic conference for August 3, 2017, to discuss the status of the matter. During the conference, the parties reported they were attempting to resolve some settlement-related issues. Defendants' counsel also advised the Court that they might have to seek to withdraw as counsel.

Following the conference, the Court ordered the parties to notify the Court by August 9 whether they had resolved the settlement issues. The Court also ordered: "Unless the parties resolve the settlement issues and file a stipulation of dismissal, on August 15, 2017, at 3 p.m. at the Edward T. Gignoux U.S. Courthouse in Portland, Maine, the Court will conduct a hearing on any motion to withdraw that is filed and will address the future course of the case." (Procedural Order, ECF No. 187.) When Defendant Alexander informed the Court that she had a medical appointment scheduled for August 15, the Court rescheduled the hearing for August 16, 2017. (Supplemental Procedural Order, ECF No. 192.) Defendants' counsel subsequently filed a motion to withdraw (ECF No. 190), which the Court granted on August 16 after hearing from counsel and Defendants. (ECF No. 197.) At the hearing, Plaintiffs informed the Court that they intended to file a motion for sanctions based on Defendants' breach of the settlement agreement.

Defendants filed a motion for sanctions on August 21, 2017. (ECF No. 202.) In their motion, they requested an evidentiary hearing to introduce evidence to establish that Plaintiffs breached the terms of any possible settlement. (*Id.* at 14.) They wrote:

> This evidence will overwhelmingly support the Defendants' contention that not only that [sic] there was no settlement, the Plaintiffs breached the terms of what they thought was a settlement and should themselves be sanctioned and compelled to settle on the terms of the redacted settlement/release document, the unredacted version of which they knowingly and willingly signed.

(*Id.*)

On August 30, 2017, Plaintiffs filed a motion for sanctions. (ECF No. 203.) In the motion, Plaintiffs recited the facts they believe establish that the parties reached a valid, binding agreement to settle the case. Plaintiffs, however, did not seek enforcement of the settlement agreement. They asserted that "enforcement of the settlement is no longer in Plaintiffs [sic] best interest and is therefore not being sought by Plaintiffs' counsel." (Motion at 17.) Instead, citing what they describe as Defendants' "pattern of misconduct" (Motion at 18) and Defendants' "contumacious conduct" (*id.*), Plaintiffs have asked the Court to enter a default against Defendants on Plaintiffs' claims and dismiss Defendant Tinkham's counterclaim.

## **WHETHER THE PARTIES ACHIEVED A SETTLEMENT AGREEMENT**

Because the parties' motions for sanctions focus on whether the parties reached a binding agreement to settle the case,[2] a preliminary issue is whether the parties in fact reached an agreement to settle the case.

---

[2] Plaintiffs contend the parties agreed to the terms contained in a draft Universal Settlement Agreement and Release of All Claims (Plaintiffs' Exhibit 2), whereas Defendants contend the parties did not agree to a

4

In the context of a request to enforce a settlement agreement, the First Circuit has determined that when a dispute exists as to whether the parties achieved a settlement or as to the terms of a settlement, an evidentiary hearing is necessary. *Fidelity and Guar. Ins. Co. v. Star Equipment Corp.*, 541 F.3d 1, 5 (1st Cir. 2008). *See also Michaud v. Michaud*, 932 F.2d 77, 81 (1st Cir. 1991) (evidentiary hearing generally required where client denies giving attorney authority to settle). Because an issue central to the assessment of the parties' motions for sanctions was whether the parties reached a binding agreement to settle the litigation, the Court scheduled an evidentiary hearing on the motions for sanctions for October 27, 2017. (Procedural Order, ECF No. 207.)

In the order scheduling the hearing, the Court noted that the evidentiary hearing would "include the issue of whether the parties reached a binding settlement agreement" and that "the parties should be prepared to address all issues raised by the motions for sanctions, including whether, if the Court were to determine that the parties reached a binding settlement, the Court should enforce the settlement agreement." (*Id.*) Prior to the hearing, the Court convened a telephonic conference to discuss several hearing-related issues.[3] Following the conference, the Court issued an order to govern the pre-hearing process and the hearing. (Procedural Order, ECF No. 211.)

---

settlement on those terms, but argue the Court should require the parties to settle on terms proposed by Defendants.

[3] Defendant Juliet Alexander, appearing pro se, participated in the conference. Defendant Peter Tinkham did not participate in the conference.

In a motion filed on October 24, Defendants asserted that they had "no intention" of appearing at the October 27 hearing "without counsel." (Motion ¶ 16, ECF No, 218.) In an order dated October 26, the Court wrote:

> Defendants have asserted that they do not intend to appear for the October 27 hearing. The Court intends to proceed with the hearing as scheduled. Defendants are cautioned that their failure to appear for the hearing could preclude not only their opportunity to be heard further on the motions for sanctions, but also could preclude their opportunity to prosecute the claims they have asserted in this action and to contest the claims made by Plaintiffs in this action.

(Order at 4 – 5, ECF No. 219.)[4]

The Court conducted the hearing as scheduled.[5] Defendants, however, did not attend the hearing. Instead, after the conclusion of the hearing, the Court learned that prior to the hearing, Defendant Alexander appeared at the courthouse and filed a series of documents that Defendants asked the Court to consider as evidence and argument. At the hearing, Plaintiffs presented a number of e-mail communications, a draft Universal Settlement Agreement and Release of All Claims, and the transcript of the August 16, 2017, hearing in this matter. (ECF No. 222.) Plaintiffs also called Michael Weinberg, Esq., and John Kiernan, Esq., to testify at the hearing.[6] (ECF No. 223.)

---

[4] The Court addressed Defendants' concerns about counsel in the same order. The record will reflect that at various times during this litigation, Defendants have been represented by different counsel and at other times have proceeded pro se, including for an approximate four-year period following their filing, pro se, of case number 1:12-cv-00229. In their motion, Defendants acknowledged that they had discharged five attorneys and not contested the withdrawal of a sixth attorney. (Motion at 1, ECF No. 218.)

[5] Prior to the hearing, Defendants filed a "motion in limine" in which Defendants argued various issues and asked the Court to cancel the hearing. (Motion, ECF No. 214.) The Court denies the relief requested in the motion.

[6] Prior to the hearing, Plaintiffs filed a motion in limine in which they asked the Court to compel Defendants to waive the attorney-client privilege based on Defendant Alexander's prior representations to the Court and Plaintiffs that she waived the privilege, or, alternatively, to exclude all evidence that is within the

"Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact." *Muther v. Broad Cove Shore Ass'n*, 2009 ME 37, ¶ 6, 968 A.2d 539. "A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Campbell v. First Am. Title Ins. Co.*, 644 F. Supp. 126, 136 (D. Me. July 2, 2009) (quoting *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625, 631 (Me. 2004)). An agreement to agree on terms in the future does not amount to a binding settlement agreement, and whether the parties mutually assented to settlement or merely engaged in negotiation presents a question of intention. *In re Estate of Snow*, 2014 ME 105, ¶ 12, 99 A.3d 278, 282. "The absence of a formalized contract does not affect the binding nature of a potential contract if the parties intended to close the contract prior to a formal writing." *McClare v. Rocha*, 2014 ME 4, ¶ 20, 86 A.3d 22, 29. Under such circumstances, the written agreement is simply "a post hoc memorialization of an already existing oral agreement." *Me. Surgical Supply Co. v. Intermedics Orthopedics, Inc.*, 756 F. Supp. 597, 602 (D. Me. 1991). An attorney can bind the client to a settlement agreement if the attorney has actual authority to bind the client, as distinguished from the general authority to represent the client's interests. *Malave v. Carney Hosp.*, 170 F.3d 217, 221 (1st Cir. 1999); *Lane v. Me. Cent. R.R.*, 572 A.2d 1084, 1084 – 85 (Me. 1990).

The evidence presented at the hearing established the following:

---

attorney-client privilege. (Motion, ECF No. 217.) Defendants did not attend the hearing and thus did not offer any evidence that was within the scope of the attorney-client privilege. Plaintiffs' motion, therefore, is moot.

1. Prior to July 26, 2017, counsel for the parties engaged in a number of communications in an effort to resolve the claims asserted by the parties to this action. Primarily, the settlement negotiations were conducted between Attorney Christopher Dinan on behalf of Plaintiffs and Attorney John Kiernan on behalf of Defendants. During the settlement communications, before confirming material terms to which their respective clients would agree, each counsel advised the other that he would have to communicate with his clients.

2. Some of the communications involved representatives of two insurance companies: Arbella Mutual Insurance Company, which had issued an insurance policy that might have provided coverage for some of the claims against Defendants, and ALPS, which might have provided coverage for Plaintiff Alan Perry for the counterclaim.

3. The e-mail communications (Plaintiffs' Exhibit 1) included the following:

    a. An e-mail from Attorney Christopher Dinan to Attorney John Kiernan, dated July 25, 2017, at 6:44 p.m. that read, "My side is all set, if they receive the camp, and your side receives no percentage of the camp, no letter, and a full release including all pending litigation, and any litigation over the estate of either parent. The money we can discuss."

    b. An e-mail from Attorney John Kiernan to Attorney Christopher Dinan, dated July 26, 2017, at 8:25 a.m., that read, "Chris: I think we need to move quickly, if we are to resolve this. Can you find out if we can include the following: 1 information in some form (letter from someone?) re when, where and the cause

of death for Auburn Sr, including where he is buried 2 a return of gifts from Samantha, including her handmade quilts, picture books and Christmas and birthday cards, silver dollars commemorating his birthdays and photos of Samantha and her grandfather. 3 can you get L C Boothby to sign off on the release so that he releases any defamation claim he may have against her/them?'

c. An e-mail from Attorney Christopher Dinan to Attorney John Kiernan, dated July 26, 2017, at 8:53 a.m., that read, "On #1 – it's a public record but we'll get you a death certificate. He was 100 when he died so I'm expecting 'natural causes' and can confirm it wasn't suspicious. He is buried in Sarasota at a military cemetery. I'll get you details if we're able to settle. Al said he will work on #2. Usually with these requests much but not all can be found. We'll do our best if it will settle the case. I've reached out to the attorney who represented Clint. I think it was a mandatory counterclaim. In any event, Al doesn't expect this to be an issue and knowing Clint, neither do I. I have to go to a mediation but you can call my cell – [cell number provided]."

d. An e-mail from Attorney John Kiernan to Attorney Christopher Dinan, dated July 26, 2017, at 9:32 a.m., that read, "Thanks. I am waiting to confirm Juliet's assent and that should be this morning."

e. An e-mail from Attorney John Kiernan to Attorney Christopher Dinan, dated July 26, 2017, at 9:57 a.m., that read, "Chris: I can confirm that we have an agreement in principle. I will start working on the releases. Thank you.

9

Regards. John PS I will send another email to Ted, as well. Shall I call the Court?"

    f. An e-mail from Attorney John Kiernan to counsel of record and the Court, dated July 26, 2017, at 10:44 a.m., that read, "To All: I am pleased to report that the case has settled and we are working out the details of the proposed releases. I have informed Ms. Plummer of the resolution, so that the jurors can be informed. I thank all for your courtesy and assistance in resolving this matter. Regards. John."

4. The parties and the insurance companies involved in the case agreed on the money to be paid to Plaintiffs and Defendants. Each side would receive a payment of $80,000.

5. In the days after the Court was notified of the settlement, the parties, through counsel, exchanged drafts of the settlement agreement. The final draft before the parties contacted the Court to report an issue regarding the settlement is entitled "Universal Settlement Agreement And Release Of All Claims," which document was signed by Plaintiffs on August 2, 2017 (Plaintiffs' Exhibit 2).

6. On August 16, 2017, Michael Weinberg, an attorney retained to represent the interests of Arbella, was present when Defendant Alexander acknowledged that she had agreed to settle the case and that the terms included the material terms asserted by Plaintiffs regarding the monetary consideration, the disposition of the disputed cottage, and any probate challenge.

The evidence convinces the Court and the Court, therefore, finds that on or about July 26, 2017, the parties reached a valid, binding agreement to resolve their claims against each other and conclude this matter. The Court is persuaded that counsel for the parties had their respective clients' authority to bind their clients to the material terms of the agreement. This conclusion is supported in part by (a) the following e-mail exchange between counsel: in response to an e-mail from Christopher Dinan, Plaintiffs' counsel, on July 26, 2017, at 9:32 a.m., Defendants' counsel, John Kiernan, wrote to Mr. Dinan: "Thanks. I am awaiting Juliet's [Defendant Alexander] assent and that should be this morning." Twenty-five minutes later, at 9:57 a.m. Mr. Kiernan wrote to Mr. Dinan in pertinent part: "I can confirm we have an agreement in principle. I will start working on the releases"; (b) the email communications by which counsel exchanged drafts of the settlement document after Defendants' counsel informed the Court that the parties had settled the case; and (c) the testimony of Michael Weinberg, Esq., regarding Defendant Alexander's statements concerning the settlement.

The material terms of the parties' agreement consist of the following: a payment of $80,000 to Defendants and a payment of $80,000 to Plaintiffs; Plaintiff Laura Perry would own the cottage in Weld, Maine, which cottage is the subject of the litigation; the receipt by Defendants of information regarding the circumstances of the death of Auburn Perry, Sr., Defendant Juliet Alexander's father; the return to Defendants of certain items given by Samantha Tinkham to Auburn Perry, Sr., her grandfather; mutual release of all claims; and

the Defendants' release of any claims they might have against the Estate of Auburn Perry, Sr.,[7] and the Estate of Laura Perry upon her passing.

## THE MOTIONS FOR SANCTIONS

### A.   *Legal Standards Governing Court Sanctions*

Federal Rule of Civil Procedure 16(f) provides:

(1) In General.  On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
        (A) fails to appear at a scheduling or other pretrial conference;

        (B) is substantially unprepared to participate – or does not participate in good faith – in the conference; or

        (C) fails to obey a scheduling or other pretrial order.

(2) Imposing Fees and Costs.  Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

In addition to the authority provided by the Rules, the Court has both contempt power and inherent power to sanction a party for unacceptable conduct in the course of litigation.  "A district court's authority to issue a contempt order derives from its inherent power to 'sanction ... litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings.'" *AngioDynamics*, *Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015) (alterations in original) (quoting *United States v. Kouri–Perez*, 187 F.3d 1, 7 (1st Cir. 1999)).  Furthermore, the Court may issue sanctions

---

[7] Although the Court concludes that Defendants agreed to release any claims they might have against the Estate of Auburn Perry, Sr., the Court makes no finding as to any claims Samantha Louise Tinkham might have against the Estate of Auburn Perry, Sr.

pursuant to its inherent authority to vindicate judicial authority, without resorting to the exercise of its contempt powers. *In re Charbono*, 790 F.3d 80, 85 (1st Cir. 2015). "A district court's inherent powers to sanction parties for litigation abuses include the power to act sua sponte to dismiss a suit for failure to prosecute." *Diaz-Santos v. Dep't of Educ. of Commonwealth of P.R.*, 108 F. App'x 638, 640 (1st Cir. 2004).

> Default or dismissal as a sanction should be used cautiously.
>
> Prior to choosing the harsh sanction of dismissal, a district court should consider the broad panoply of lesser sanctions available to it, such as contempt, fines, conditional orders of dismissal, etc. The severe sanction of dismissal serves as a powerful means of deterring others from frustrating the district court's well justified efforts at docket management, but it is not the only such deterrent.

*Crossman v. Raytheon Long Term Disability Plan*, 316 F.3d 36, 39 – 40 (1st Cir. 2002) (internal quotation marks and citations omitted). When assessing whether dismissal is warranted, a court must consider "the gravity of the violation and balance it with the need for order in the trial court, the prejudice to the other party, and the preference for disposing of a case on the merits." *Id.* (citing *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003)).

### B. *Defendants' Motion for Sanctions*

Defendants evidently contend that Plaintiffs and their counsel made certain misrepresentations regarding the settlement and should be sanctioned. Defendants' argument is without merit. First, Defendants failed to appear for the hearing on the motion for sanctions, a hearing they specifically requested at the time they filed the motion for sanctions. Defendants, therefore, have failed to present any evidence to support their

contention.[8] In addition, the record lacks any evidence to suggest that Plaintiffs or their counsel have engaged in any conduct that could rationally be construed as supporting a sanction.

### C. *Plaintiffs' Motion for Sanctions*

Plaintiffs contend that Defendants' failure to honor the settlement agreement is part of a pattern of misconduct that warrants the ultimate sanction – the entry of default against Defendants on Plaintiffs' claims and the dismissal of Defendant Tinkham's counterclaim. As explained above, consistent with counsel for Defendants' report to the Court on July 26, 2017, and in accordance with Plaintiffs' argument at the hearing on the motions for sanctions, the Court has concluded that the parties reached an agreement to settle the case.

In support of their request for a default and dismissal, Plaintiffs contend that Defendants' failure to honor the agreement and failure to appear for the hearing on the motions for sanctions are the latest incidents of many in which Defendants have failed to

---

[8] The Court on multiple occasions informed the parties of its intention to resolve the motions for sanctions with an evidentiary hearing, and the Court instructed the parties to identify witnesses and exchange exhibits in anticipation of the hearing. (ECF Nos. 206, 207, 209, 211, 216.) Given the nature of the dispute, an evidentiary hearing was not only appropriate, but necessary. 8 James Wm. Moore, Moore's Federal Practice—Civil § 43.05[2] (3d ed. 2012) ("A district court has considerable discretion to decide Rule 43(c) motions solely on the basis of affidavits or to take oral testimony at a hearing, but when questions of fact or credibility predominate, the district court should hear oral testimony; a failure to do so is likely to be considered an abuse of discretion."). In fact, Defendants requested an evidentiary hearing when they filed their motion for sanctions. (Defendants' Motion at 14, ECF No. 202.) When the Court scheduled the hearing, the Court informed the parties that the Court "will conduct an evidentiary hearing on the motions, including the issue of whether the parties achieved a binding settlement." (Procedural Order, ECF No. 207.) Rather than attend and participate in the hearing, on the morning of the hearing, Defendant Alexander appeared at the courthouse and filed a number of documents. Defendants cannot disregard the hearing, present evidence in a manner not authorized by the Court, and expect the Court to consider the evidence in its assessment of the material issues generated at the hearing. When Defendants expressed an intention not to appear for the hearing, the Court cautioned Defendants that "their failure to appear for the hearing could preclude … their opportunity to be heard further on the motions for sanctions." (Order at 4 – 5, ECF No. 219.)

follow court orders, have engaged in dilatory conduct, and have otherwise demonstrated contempt and disrespect for the Court and the judicial process. Plaintiffs maintain that Defendants' conduct has resulted in increased costs and an unnecessary commitment of time and resources for them and the Court.

Plaintiffs' concerns are understandable. The pleadings and orders in the consolidated matters (1:12-cv-229-GZS; 2:15-cv-310-JCN) contain multiple examples to support Plaintiffs' contentions. In fact, early in the proceedings, the Court warned Defendants against "groundless and frivolous filings," and noted that Defendants "would be well-advised to focus their filings going forward on the merits of the claims on which they seek judicial review." (Order, 1:12-cv-229-GZS, ECF No. 115.) When Defendants failed to comply with a monetary sanction imposed by the Court, the Court dismissed their claims in 1:12-cv-229-GZS. (Order, ECF No. 128.) In the order of dismissal, the Court noted that Defendants had engaged "in a variety of unproductive litigation tactics, including making frivolous filings." (*Id.*) Despite the Court's admonitions, rather than limit their submissions to the merits of their arguments, Defendants have continued to make assertions and arguments that can fairly be characterized as unproductive.

While Defendants' conduct at various stages of the proceedings has been concerning and worthy of the Court's prior sanction order, Plaintiffs' motion presents the issue of whether the Court can and should on the claims the parties resolved by settlement, impose the ultimate sanction upon two of the parties to the action, and conduct a hearing on Plaintiffs' damages.

When parties to litigation agree to settle a case, the parties' settlement agreement is governed by contract principles. *Perez v. State of Me.*, 760 F.2d 11, 12 (1st Cir. 1985); *2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc.*, 2014 ME 147, ¶ 10, 106 A.3d 1131, 1133. Accordingly, when a party breaches an agreement to settle or compromise an action, unless the agreement contemplates the restoration of the underlying cause(s) of action in the event of a breach of the agreement, a party would have an action on the contract. *See, e.g.*, *Halco v. Davey*, 2007 ME 48, 919 A.2d 626 (assessing independent claim for breach of settlement agreement); *Fairfax Countywide Citizens Ass'n v. Fairfax Cnty., Va.*, 571 F.2d 1299, 1305 (4th Cir. 1978) (claim of breach of settlement agreement "is factually and legally distinct from the claim giving rise to the original litigation"); *cf. Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 – 81 (1994) (breach of settlement agreement that secured dismissal of federal action is not a valid basis for seeking relief in federal court; an independent basis for federal jurisdiction must exist to assert the resulting breach of contract claim in federal court).[9] In other words, the potential remedy for a party's failure to honor a settlement agreement typically includes a separate action for breach of contract, *Kokkonen*, 511 U.S. at 380 – 81, or a motion to enforce the agreement. *Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 797 F.3d 83, 86 (1st Cir. 2015) (federal district court with subject matter jurisdiction over a dispute may enforce settlement prior

---

[9] *Kokkonen* would support this Court's exercise of ancillary jurisdiction to enforce the settlement agreement in the context of the current action while the matter remains pending. 511 U.S. at 378 – 80. Upon dismissal of the instant action, a party who wants to enforce the agreement would have to assert an independent basis for this Court's jurisdiction if the party filed the action for breach of the settlement agreement in this Court. *Id.*

to dismissal of the suit); *Malave*, 170 F.3d at 220 ("A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges.").

Such an approach is consistent with the view that "settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 n.1 (1st Cir. 1983) (quoting *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir. 1975)); *see also Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts…."); *Benner v. Lunt*, 126 Me. 167, 136 A. 814, 816 (1927) ("[C]ompromises are favored in equity, and, where a contract, arising in compromise of a claim, has been entered into but not fully executed, where the negotiations are between adults, and all is fair, open, and aboveboard, its provisions may be enforced, and, if the case is a proper one for the exercise of equity jurisdiction, relief may be had in equity by way of specific performance.").

Here, Plaintiffs have not asked the Court to enforce the agreement. Instead, Plaintiffs ask the Court to impose a sanction that would summarily resolve the underlying claims in Plaintiffs' favor.[10] Although the Court understands Plaintiffs' frustration with Defendants' conduct, Plaintiffs have offered no persuasive authority to support their request that on a matter the parties resolved by settlement, the default of Defendants on

---

[10] The First Circuit has also noted that in certain circumstances, a party might be entitled to reopen a settled case where the other party to a settlement agreement repudiates the agreement. *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 15 (1st Cir. 1982); *Warner v. Rossignol*, 513 F.2d 678, 683 (1st Cir. 1975). Because Plaintiffs did not seek a trial on the underlying claims, the Court did not construe Plaintiffs' motion to request the reinstatement or reopening of the underlying claims, and repudiation was not identified as an issue for the hearing. The Court, therefore, makes no finding on the issue of repudiation and offers no opinion whether such relief would be warranted in this case.

Plaintiffs' claims and the dismissal of Defendant Tinkham's counterclaim, rather than the remedies recognized by the First Circuit, are appropriate. In short, the Court is not convinced that Plaintiffs are entitled to the sanctions they seek.

### D. *Case Status*

On July 26, 2017, Defendants' counsel notified the Court that the parties had settled this matter. Subsequent to the notification, both parties filed motions for sanctions. Because the Court has now resolved the motions for sanctions, there is no request for relief pending in this case. The Court, therefore, will proceed with the understanding, as reported to the Court on July 26, that the parties have settled the matter.

## CONCLUSION

Based on the foregoing analysis, the Court denies the parties' motions for sanctions. Consistent with the parties' report of a settlement prior to the scheduled trial, the Court will dismiss the case with prejudice within 30 days unless a party files a motion that requires further proceedings in this matter.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 19th day of January, 2018.