UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ALAN J. PERRY, et al.,        )
                              )
         Plaintiffs           )
                              )
    v.                        )    2:15-cv-00310-JCN
                              )
PETER TINKHAM, et al.,        )
                              )
         Defendants           )
_____)
                              )
PETER TINKHAM, et al.,        )
                              )
         Plaintiffs           )
                              )
    v.                        )
                              )
                              )
LAURA PERRY, et al.,          )
                              )
         Defendants           )

# DECISION AND ORDER ON PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AND FOR SANCTIONS, AND DEFENDANTS' MOTION FOR JUDICIAL AID IN SETTLEMENT

After the Court denied the parties' motions for sanctions (Decision and Order, ECF No. 238), which motions focused on the terms by which the parties agreed to settle this case, Defendants filed a Motion for Judicial Aid in Settlement (ECF No. 239),[1] and

---

[1] Defendants' motion was dated January 18, 2018, but received and docketed on January 22, 2018. The Court's Decision and Order was docketed on January 19, 2018. The envelope by which Defendants mailed their motion to the Court is post-marked January 18, 2018. (ECF No. 239-2.) Defendants, therefore, apparently had not received the Decision and Order at the time they prepared and forwarded to the Court their motion.

Plaintiffs' filed a Motion to Enforce Settlement Agreement and for Sanctions. (ECF No. 241.) The parties' motions again focus on the status of and terms of the parties' settlement.[2]

After consideration of the parties' filings and following a review of the record, the Court grants Plaintiffs' motion to enforce the settlement agreement, grants in part Plaintiff's motion for sanctions, and denies Defendants' motion for judicial aid in settlement.[3]

---

[2] Local Rule 7(a) provides in relevant part: "Unless within 21 days after the filing of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection." Although in their motion, Plaintiffs address to some degree Defendants' motion, none of the parties filed a direct opposition to the other parties' motion. Given the history of the case and the parties' competing arguments in their respective motions, an assessment of the merits of the motions is nevertheless appropriate. *Cf. Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004) ("[A] court may not automatically treat a failure to respond … as a procedural default."); *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003) ("If the merits are at issue, the mere fact that a motion … is unopposed does not relieve the district court of the obligation to examine the [merits].").

[3] On March 5, 2018, Defendants filed an interlocutory appeal from the Court's Decision and Order on the parties' motions for sanctions (ECF No. 247), and on May 16, 2018, Defendants filed an interlocutory appeal from the Court's Decision and Order on Defendants' motion on jurisdiction. (ECF No. 260.) Defendants previously filed an appeal regarding the Court's interlocutory order on their motion to appoint counsel (ECF No. 224), which appeal the First Circuit dismissed. (Judgment, ECF No. 259.) "[A]s a general rule, the filing of a notice of appeal divests a district court of authority to proceed with respect to any matter touching upon, or involved in, the appeal." *United States v. Brooks*, 145 F.3d 446, 455 (1st Cir. 1998) (internal quotation marks omitted). However, the Courts of Appeals have jurisdiction of appeals from final decisions, 28 U.S.C. § 1291, a defined group of interlocutory decisions, 28 U.S.C. § 1292, and a "small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The orders challenged in Defendants' notice of appeal are not final orders under § 1291 and are not a type of interlocutory order subject to appeal under § 1292. Furthermore, because the orders address the denial of the parties' motions for sanctions and thus would not evade review on appeal of a final order, the orders do not fall within the "collateral order doctrine." *United States v. Gorski*, 807 F.3d 451, 458 (1st Cir. 2015). *See also Brooks*, 145 F.3d at 456 ("[A] district court can proceed, notwithstanding the filing of an appeal, if the notice of appeal is defective in some substantial and easily discernible way (if, for example, it is based on an unappealable order) or if it otherwise constitutes a transparently frivolous attempt to impede the progress of the case."); *Rivera-Torres v. Ortiz Velez*, 341 F.3d 86, 96 (1st Cir. 2003) (same). Accordingly, the Court concludes that Defendants' filing of the notices of appeal did not divest the Court of jurisdiction.

## DISCUSSION

1.  **Plaintiffs' Motion to Enforce Settlement Agreement**

Central to the parties' motions for sanctions (ECF Nos. 202, 203) was whether the parties' reached a binding agreement to resolve this matter. Because the parties' motions revealed certain factual disputes as to whether the parties reached a binding settlement, as set forth in the Decision and Order on the motions for sanctions (Decision and Order, ECF No. 238), the Court scheduled an evidentiary hearing on the motions.[4] In its order scheduling the hearing, the Court noted that the evidentiary hearing would "include the issue of whether the parties reached a binding settlement agreement" and that "the parties should be prepared to address all issues raised by the motions for sanctions, including whether, if the Court were to determine that the parties reached a binding settlement, the Court should enforce the settlement agreement." (Procedural Order, ECF No. 207.)

The Court conducted the evidentiary hearing on October 27, 2017.[5] Following the hearing, the Court made certain factual findings and concluded that "on or about July 26, 2017, the parties reached a valid, binding agreement to resolve their claims against each other and conclude this matter." (Decision and Order at 11.) The Court further found:

> The material terms of the parties' agreement consist of the following: a payment of $80,000 to Defendants and a payment of $80,000 to Plaintiffs; Plaintiff Laura Perry would own the cottage in Weld, Maine, which cottage is the subject of the litigation; the receipt by Defendants of information regarding the circumstances of the death of Auburn Perry, Sr., Defendant Juliet Alexander's father; the return to Defendants of certain items given by

---

[4] The relevant history is set forth in detail in the Decision and Order and is incorporated herein.

[5] As explained in the Decision and Order, rather than attend and participate in the hearing, on the morning of the hearing, Defendant Alexander appeared at the courthouse and filed a number of documents. Defendant Tinkham also did not attend the hearing.

> Samantha Tinkham to Auburn Perry, Sr., her grandfather; mutual release of all claims; and the Defendants' release of any claims they might have against the Estate of Auburn Perry Sr., and the Estate of Laura Perry upon her passing.

(*Id*. at 11-12.)

The Court, however, did not order the enforcement of the agreement because Plaintiffs' had not requested enforcement. Instead, Plaintiffs requested the dismissal of Defendant Tinkham's claim and the entry of a default on Plaintiffs' claims, which requests the Court denied. Plaintiffs now seek enforcement of the settlement agreement.

A party may seek to enforce a settlement agreement by motion before the underlying matter is dismissed. *Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 797 F.3d 83, 86 (1st Cir. 2015) (federal district court with subject matter jurisdiction over a dispute may enforce settlement prior to dismissal of the suit); *Malave v. Carney Hosp.*, 170 F.3d 217, 220 (1st Cir. 1999) ("A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges."). "The trial court may summarily enforce the agreement, provided there is no genuinely disputed question of material fact regarding the existence or terms of that agreement." *Fidelity and Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008). In the event of a disputed material fact, the court must conduct an evidentiary hearing. *Id*.

In this case, while the parties' earlier filings revealed material facts in dispute that required an evidentiary hearing, no material facts remain in dispute following the Court's findings after the evidentiary hearing. The Court incorporates herein the findings set forth

4

in the Decision and Order (ECF No. 238). Based on the findings and the current record, the Court can and will order the enforcement of the settlement without further hearing.

**2.     Defendants' Motion for Judicial Aid in Settlement**

Through their Motion for Judicial Aid in Settlement (ECF No. 239), Defendants ask the Court to enforce a settlement on terms other than as found by the Court after the evidentiary hearing. Because the relief Defendants seek is unsupported by the record, Defendants' motion fails.

**3.     Plaintiffs' Motion for Sanctions**

Plaintiffs request the Court sanction Defendants by awarding Plaintiffs the fees Plaintiffs incurred after the parties agreed to settle the matter. More specifically, Plaintiffs ask the Court to award all fees incurred "since the end of July." (Motion at 6.) In support of the motion, Plaintiffs maintain that Defendants not only failed to honor the parties' agreement to settle, but also engaged in egregious misconduct throughout the course of the litigation. (*Id.* at 7.) Plaintiffs request that the award be paid out of the funds that would be paid to Defendants under the settlement agreement, and that the award include fees and costs that may yet be incurred given Defendants' history of filing unproductive motions and appeals. (*Id.* at 8 – 9.)

The Court has both contempt power and inherent power to sanction a party for unacceptable conduct in the course of litigation. "A district court's authority to issue a contempt order derives from its inherent power to 'sanction ... litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings.'" *AngioDynamics*, *Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015)

5

(alterations in original) (quoting *United States v. Kouri–Perez*, 187 F.3d 1, 7 (1st Cir. 1999)). Furthermore, the Court may issue sanctions pursuant to its inherent authority to vindicate judicial authority, without resorting to the exercise of its contempt powers. *In re Charbono*, 790 F.3d 80, 85 (1st Cir. 2015).

A court may award sanctions upon finding that a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. Nesco, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 258–59 (1975)). Because of its potency, "a court's inherent power to shift attorneys' fees 'should be used sparingly and reserved for egregious circumstances.'" *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995) (quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 3 (1st Cir. 1993)). A district court exercising this power "must describe the bad faith conduct with 'sufficient specificity,' accompanied by a 'detailed explanation of the reasons justifying the award.'" *Id.* (quoting *Gradmann & Holler GmbH v. Cont'l Lines, S.A.*, 679 F.2d 272, 274 (1st Cir. 1982)).

The breach of an agreement to settle the case, in isolation, does not necessarily constitute the egregious conduct required for a fee-shifting award.[6] On occasion, parties report the settlement of a case, but subsequently realize there was a miscommunication or misunderstanding about the material terms of the agreement. In this case, however, the evidence established that the breach was not the result of a misunderstanding or miscommunication. At the evidentiary hearing, Michael Weinberg, an attorney retained to

---

[6] The settlement agreement in this case did not include a fee-shifting provision.

represent the interests of Arbella Insurance Company, credibly testified that in August 2017, Defendant Alexander acknowledged that she agreed to the material terms of the agreement. After Defendants informed the Court that the matter had been resolved, and after the Court discharged the jury, Defendants:

  a. Filed a motion for sanctions (ECF No. 202);

  b. Filed a motion in limine in which Defendants asked the Court to cancel the evidentiary hearing on the parties' motion for sanctions despite the fact Defendants requested a hearing on their motion for sanctions (ECF No. 214);

  c. Failed to appear for the evidentiary hearing on their motion for sanctions and Plaintiffs' motion for sanctions;[7]

  d. Filed a motion for the appointment of counsel despite the fact that they did not qualify for in forma pauperis status and, as set forth in their motion, had discharged five prior attorneys and not objected to the withdrawal of a sixth attorney (Motion, ECF No. 218; Order, ECF No. 219);

  e. Filed an interlocutory appeal from the order denying the motion for appointment of counsel (ECF No. 224);

  f. Filed a motion for judicial aid in settlement addressed herein (ECF No. 239);

  g. Filed a Motion to Revise and Revoke the Court's Decision and Order denying the parties' motions for sanctions (ECF No. 245);

---

[7] The Court scheduled a combined hearing on the parties' motions for sanctions. Defendants failed to attend the hearing even though Defendants had requested a hearing on their motion for sanctions.

    h. Filed an interlocutory appeal from the Court's Decision and Order denying the parties' motions for sanctions (ECF No. 247);

    i. Filed a motion challenging the Court's jurisdiction, which motion the Court denied (Motion, ECF No. 254; Order, ECF No. 257); and

    j. Filed an interlocutory appeal from the Court's Decision and Order on Defendants' Motion on Jurisdiction. (ECF No. 260.)

A party has a right, in accordance with the rules of procedure, to seek appropriate relief from a trial court and to seek the review of an appellate court. However, many of Defendants' filings before and after the settlement was reported in July 2017 have been baseless, unproductive, and simply a means for Defendants to disparage their counsel, Plaintiffs, Plaintiffs' counsel, and the court process.[8]

Although the Court expects litigants to advocate zealously for their respective positions and to challenge as permitted by law the decisions of the Court, Defendants' filings go well beyond spirited advocacy. Defendants have been warned about the inappropriateness of such filings. The Court previously cautioned against "groundless and frivolous filings" and informed Defendants that they "would be well-advised to focus their filings going forward on the merits of the claims on which they seek judicial review."

---

[8] By way of example, Defendants have made the following baseless assertions in some of their filings after the parties agreed to settle the matter: accused Plaintiffs' counsel of committing a fraud upon the court (ECF No. 202 at 13; ECF No. 218-1); described Plaintiffs as "crooked" (ECF No. 205 at 2 – 3, ¶ 7); alleged that Plaintiffs' counsel "suborned perjury" and described one of the plaintiffs as a "crook" (*Id.* ¶ 10); asserted Plaintiffs' counsel "lied" to the court on "numerous occasions" (*Id.* ¶ 21); described the assertions of Plaintiffs' counsel as "corrupt" (*Id.* ¶ 26); and referred to Plaintiffs and their counsel as a "racketeer-in-chief," "two ruthless, racketeering lawyer children" "and their corrupt attorneys." (ECF No. 245.)

(Order (Singal, J.), 1:12-cv-229-GZS, ECF No. 115.) In fact, prior to consolidation, in case numbered 1:12-cv-229-GZS, when the Court ultimately dismissed Defendants' claims based on their failure to comply with a monetary sanction imposed by the Court, the Court noted that Defendants had engaged "in a variety of unproductive litigation tactics, including making frivolous filings." (Order, ECF No. 128.) Furthermore, although the Court denied Plaintiffs' motion for sanctions following the evidentiary hearing on the parties' motions for sanctions, the Court observed that despite the Court's warning, Defendants continued to make unproductive filings and arguments. (Decision and Order at 15, ECF No. 238.) Following the Court's observations about Defendants' conduct, Defendants chose not to respond directly to Plaintiffs' pending motion for sanctions, but persisted in making similar filings.[9]

Defendants' conduct, including the baseless arguments they have made in their effort to disavow the terms of the settlement to which they agreed, is conduct worthy of sanction. The Court would not tolerate such conduct by an attorney representing a party. The fact that Defendants are pro se litigants does not excuse their conduct. *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986) ("[O]ne acting pro se has no license to harass others, clog the judicial machinery with meritless litigation ….").

---

[9] The party against whom a sanction is contemplated should receive the opportunity to be heard. *See*, *e.g.*, Fed. R. Civ. P. 11(c). Here, Defendants were on notice of Plaintiffs' motion for sanctions and were afforded the opportunity to respond to the motion in accordance with the Federal Rules of Civil Procedure. In addition, Defendants were placed on notice by previous court orders that their conduct was concerning and that they should alter their practices. Despite the admonishments and the opportunity to respond substantively to Plaintiffs' requests for sanctions, Defendants persisted in filing documents with baseless and vexatious contentions and commentary. "[T]he party, by controlling his or her conduct in litigation, has the power to determine whether sanctions will be assessed." *Chambers*, 501 U.S. at 53.

While the Court does not impose sanctions lightly, a sanction in this case, imposed in accordance with the Court's inherent powers, is necessary not only to address Defendants' conduct, but also "to deter those who might be tempted to such conduct in the absence of such a deterrent." *John's Insulation, Inc. v. L. Addison and Assocs., Inc.*, 156 F.3d 101, 108 (1st Cir. 1998) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Here, the Court believes that a monetary sanction that at least in part considers the financial burden Plaintiffs have incurred in connection with the need to respond to some of Defendants' many unproductive filings and in their request to enforce the parties' settlement agreement is warranted. [10]

## CONCLUSION

Based the foregoing analysis, the Court denies Defendants' Motion for Judicial Aid in Settlement.

Based on the foregoing analysis, the findings set forth herein and in the Decision and Order (ECF No. 238), the Court grants Plaintiffs' Motion to Enforce the Settlement Agreement. The Court specifically orders the enforcement of the parties' settlement agreement on the following terms:

---

[10] While the Court included Defendants' filing of interlocutory appeals among the evidence of Defendants' continued litigation after they agreed to settle the case, the Court does not intend to include in the assessment of the sanction time counsel devoted to any interlocutory appellate proceedings or future appellate proceedings involving the review of this Court's orders. In the Court's view, whether a sanction should be imposed for the repeated filing of interlocutory appeals is more appropriately a matter for the First Circuit Court of Appeals. *See*, *e.g.*, *Manion v. Am. Airlines, Inc.*, 395 F.3d 428, 433 – 44 (D.C. Cir. 2004).

10

1. Defendants shall pay to Plaintiffs the sum of $80,000, which payment shall be made through insurance proceeds committed to the settlement.

2. Plaintiffs shall pay to Defendants the sum of $80,000, which payment shall be made through insurance proceeds committed to the settlement.

3. Defendants have released and shall release all claims they had against Plaintiffs and L. Clinton Boothby, a former party to the case, as of July 26, 2017. Defendants have released and shall release all claims they might have against the Estate of Laura Perry.

4. Plaintiffs and L. Clinton Boothby have released and shall release all claims they had against Defendants as of July 26, 2017.

5. Defendants have released and shall release all claims they had against the Estate of Auburn Perry as of July 26, 2017.

6. Defendants have released and shall release any interest they have in the Weld property that is the subject of this action.

7. Plaintiffs shall return to Defendants certain items given by Samantha Tinkham to Auburn Perry, Sr.

8. Plaintiffs shall provide Defendants with information regarding the circumstances of the death of Auburn Perry, Sr.

The parties shall sign all documents necessary to implement the settlement. On or after May 29, 2018, Plaintiffs shall forward to Defendants, in a form by which Defendants' receipt of the documents can be verified, the documents Plaintiffs believe Defendants must

sign to implement the terms of the settlement.[11] Within 7 days of the receipt of the documents, Defendants shall execute the documents and return the executed original documents to Plaintiffs' counsel.[12]

Based on the foregoing analysis, the Court grants in part Plaintiffs' Motion for Sanctions. Within 21 days of the date of this order, Plaintiffs may file an affidavit and relevant documentation regarding the attorney fees and costs they have incurred in connection with the filings, other than appeal-related filings, made after counsel for Defendants notified the Court on July 26, 2017, that the matter had been resolved.

Because the Court has found the parties entered into a binding agreement to settle the matter, and because the Court has ordered the enforcement of the settlement, the claims and defenses asserted in this matter are resolved. Accordingly, after the Court issues a further order on Plaintiffs' motion for sanctions, the Court will dismiss the complaint and counterclaim with prejudice. However, the United States District Court for the District of

---

[11] Because Defendants are not registered to receive electronic notification of filings on the Court's docket, and because the Court, through this order, will require Defendants to return the fully-executed documents to Plaintiffs within a specified period, the Court has allowed time for Defendants to receive this Decision and Order before Plaintiffs forward the documents to Defendants for execution.

[12] The Court recognizes that Plaintiffs have asked the Court to deem that Defendants have signed a release and that Defendants have signed a deed transferring all interest in the Weld property. Because the Court has not previously ordered the enforcement of the settlement, the Court believes it appropriate to permit Defendants the opportunity to comply with the Court's order before the Court considers whether any other enforcement measures are appropriate, including whether to deem that Defendants have signed certain documents. In the event Defendants do not comply with the Court's order, Defendants are advised that further sanctions are possible and the Court will consider Plaintiffs' request to deem the settlement-related documents to have been signed by Defendants. *See*, *e.g.*, *Farmer v. Banco Popular of N.A.*, 791 F.3d 1246 (10th Cir. 2015) (upholding imposition of sanctions for party's failure to comply with order to perform under the terms of a settlement agreement); *Queens Syndicate Co. v. Herman*, 691 F. Supp. 2d 283 (D. Mass. 2010) (ordering party to execute mutual release within 14 days and providing that release otherwise would be deemed executed by that date); *Big-D Constr. Corp. v. Take It For Granite Too*, No. 2:11-cv-621, 2013 WL 4519339 (D. Nev. Aug. 23, 2013) (deeming settlement agreement fully executed upon party's failure to fully execute settlement documents).

Maine will retain jurisdiction to enforce the terms of this Decision and Order and the terms of the parties' settlement agreement.

    ***SO ORDERED.***

/s/ John C. Nivison<br>U.S. Magistrate Judge

Dated this 24th day of May, 2018.